UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
Case No.: 19-CV-21496-DPG

WALTER ALTARE, and all others
similar situated under 29 U.S.C. 206(B)

    Plaintiff,

vs.

VERTICAL REALITY MFG, INC., a Florida
Limited Liability Company,
KENNETH A. SHARKEY, individually,

    Defendant.

_____/

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT THEREOF

Defendants, VERTICAL REALITY MFG, INC. and KENNETH A. SHARKEY by and through the undersigned counsel, and pursuant to Federal Rule of Civil Procedure 56, hereby file and serve the above-styled Motion and state the following in support thereof:

1.    The crux of Plaintiffs' claims are for overtime under the Fair Labor Standards Act (FLSA). Each Count of Plaintiffs' Amended Complaint, with the exception of Counts V and VI - which are not causes of action as discussed in Defendants' Partial Motion to Dismiss - is dependent on whether Plaintiffs come within the purview of the FLSA. The FLSA does not apply to Plaintiffs' work because (1) each Plaintiff was an independent contractor and (2) even if they were employees, there is overwhelming evidence establishing that the motor carrier exemption applied to their work. An employee cannot be subject to the jurisdiction of both the Secretary of Labor and the Secretary of Transportation at the same time. *See, e.g., Cantu v. Brink's Co.*, 186 F. Supp. 3d 846, 851 (N.D. Ill. 2016)(full citation omitted). As per *Morris v. McComb,* 332 U.S. 422, 432-

35 (1947), and its progeny, even a minor involvement in interstate commerce as a part of employee's regular duties can subject that employee to the jurisdiction of the Secretary of Transportation and not the Secretary of the Department of Labor.

2. Defendants manufacture amusement equipment such as rock-climbing walls and large commercial trampolines for sale throughout the world. Instead of utilizing a shipping company, Vertical Reality used Plaintiffs, each licensed commercial drivers, to drive Defendants' flatbed truck around the United States delivering its goods. Plaintiff Pulido was also a welder who used his own tools. Vertical Reality did not train either Plaintiff; nor did Defendants evaluate or control their work outside of an independent contractor relationship.

3. Plaintiff Altare was an on-call contractor who spent the vast majority of his time, unsupervised, driving Vertical Reality's flatbed truck around the United States delivering the amusement equipment manufactured by Vertical Reality. When he was not driving for Vertical Reality, he was waiting at home for a phone call informing him of his next job.

4. Counts I through IV are specifically based on the applicability of the FLSA. Summary judgment is appropriate for those counts because Plaintiffs were independent contractors and were exempt under the motor carrier act.

5. There is no cause of action as a matter of law for Counts V and VI for the reasons stated in Defendants' motion to dismiss those counts. (Doc. No. 55). Therefore, summary judgment is appropriate for those counts.

6. Count VII, unjust enrichment, is also dependent on the applicability of the FLSA to this lawsuit. As per the allegations of ¶ 83 of Plaintiffs' Amended Complaint, Plaintiffs' unjust enrichment claim is based on an allegation that Defendants misclassified Plaintiffs in order to avoid employer payroll taxes. No taxes would be due if Plaintiffs were not employees. To the

extent that Plaintiffs' claims under Count VII are based on some contrived cause of action for misclassification under Florida law, that claim should also fail as a matter of law for the reasons stated in Defendants' motion to dismiss those counts. (Doc. No. 55).

WHEREFORE, based on the foregoing, Defendants request that the Court enter judgment in this matter on all counts in favor of Defendants.

## MEMORANDUM OF LAW

**Plaintiffs were independent contractors.**

Plaintiffs were independent contractors because each set their own work hours, were paid as such, were free to work for others and were not subject to the type of control or job appraisals that are indicative of an employee/employer relationship. Plaintiff Altare testified emphatically that he waited, sometimes for weeks at a time, for Vertical Reality to call him for a delivery job. Plaintiff Altare operated on his own when delivering or maintaining equipment and therefore was not supervised. Plaintiff Pulido needed no supervision when he was welding or driving. Plaintiff Altare called himself an independent contractor in a text message exchange he had with Ken Sharkey. Defendants did not train Plaintiffs. Each Plaintiff was paid as an independent contractor and Plaintiff Altare filed his tax returns, with expenses, as an independent contractor.

The protections of the FLSA do not apply to independent contractors. *See, e.g., Scantland v. Jeffry Knight, Inc.,* 721 F. 3d 1308, 1311 (11th Cir. 2013). To determine whether an individual falls into the category of a covered "employee" or exempted "independent contractor," courts look to the "economic reality" of the relationship between the alleged employee and alleged employer and whether that relationship demonstrates dependence. *Id.* (full citation omitted). Courts have applied various multifactor tests to guide the "economic reality" inquiry. The Eleventh Circuit has held that the following six factors, may be used as guides in applying the economic reality test:

> "(1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed;
> (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;
> (3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers;
> (4) whether the service rendered requires a special skill;
> (5) the degree of permanency and duration of the working relationship;
> (6) the extent to which the service rendered is an integral part of the alleged employer's business.

*Scantland*, 721 F.3d at 1311–12. While these factors serve as guides, the overarching focus of the inquiry is economic dependence. *Id.*

### (1) Degree of control

The nature of Plaintiffs' job duties render summary judgment to be appropriate. There is no genuine issue of material fact that Defendants did not supervise Plaintiffs by virtue of their job duties. Plaintiffs drove a truck around the United States for Vertical Reality. Driving a truck across the United States is hardly the type of activity that requires any supervision whatsoever. Plaintiffs were gone from South Florida and on the road for long periods of time. Defendants did little more to control Plaintiffs' work as drivers other than to tell them the destination and timeframe for delivery. Neither Plaintiff needed additional direction as to how to drive a truck; nor was their respective job performance as drivers ever assessed. Plaintiff Pulido was also a welder and conceded that nobody supervised him with regard to welding; nor were the quality of his welds ever inspected or assessed by any one from Vertical Reality. Each Plaintiff set his own work hours and was free to reject Vertical Reality's offer of a job assignment to make a delivery.

### (2) Opportunity for Profit and Loss

Each Plaintiff was free to state they were not available to make a delivery and thus had the freedom to make more or less money. Plaintiff Altare rejected driving jobs on occasion, including those times he was traveling to visit his daughter, or Colombia, or had a doctor's appointment.

4

Plaintiff Altare profited from his own side job while working for Vertical Reality when he bought and sold equipment made by a competitor. Plaintiff Pulido would not have suffered any consequences if he missed work.

**(3) Investment in materials used for work**

Plaintiff Pulido conceded that he used his own tools when welding for Vertical Reality. It is also undisputed that Plaintiff Pulido took those tools with him after he stopped working with Vertical Reality. In *Keller v. Miri Microsystems LLC*, 781 F.3d 799, 810–11 (6th Cir. 2015), the Sixth Circuit found that an investment in welding equipment "signals a greater degree of economic independence because it is not a common item that most people use daily."

**(4) Whether the work requires special skill**

It is undisputed that each Plaintiff held a CDL-B driver's license. According to 49 C.F.R. § 383.91, the holder of a CDL-B must possess the knowledge and skills necessary to operate a vehicle with a gross vehicle weight of 26,001 pounds or more or any such vehicle towing a vehicle not in excess of 10,000 pounds, gross vehicle weight.

It is undisputed that as a holder of a commercial driver's license, each Plaintiff was tasked with the ability to drive a large vehicle across the country and was subjected to numerous requirements to assure the safety of the vehicle. Courts have determined that the possession of a commercial driver's license is a special skill. *See, e.g., United States v. Ordonez,* 334 F. App'x 619, 624 (5th Cir.2009) ( "We agree that possession of a CDL is a special skill."); *United States v. Mendoza,* 78 F.3d 460, 465 (9th Cir.1996) ("[T]he driving of an 18–wheeler ... is a skill well beyond that possessed by the general public [and is sufficient to constitute a] special skill[.]"); *United States v. Lewis,* 41 F.3d 1209, 1214 (7th Cir.1994) ("Truck driving requires technical knowledge or ability that the average citizen does not possess."); *see, also, e.g.,*

*Luxama v. Ironbound Exp., Inc.,* CIV.A. 11-2224 ES, 2012 WL 5973277, at *6 (D.N.J. June 28, 2012)(Rule 12(b)(6) motion to dismiss granted where truck drivers claimed they were employees pursuant to the FLSA). In *Nieman v. National Claims Adjusters*, 775 Fed. Appx. 622, 625 (11th Cir. 2019), the Eleventh Circuit held that this factor weighed in the defendant's favor because the plaintiff had a license.

When he was not driving, Plaintiff Pulido was a skilled welder whose work needed no inspection or assessment. In addition, he used his own welding equipment. In *Keller v. Miri Microsystems LLC*, 781 F.3d 799, 810–11 (6th Cir. 2015), the Sixth Circuit found that an investment in welding equipment "signals a greater degree of economic independence because it is not a common item that most people use daily."

Thus, this factor is a strong indicator that Plaintiffs were independent contractors.

**(5) Degree of Permanence/Economic dependence**

Plaintiffs were free to stop working for Defendants at any time. Plaintiff Altare had side businesses while he drove for Vertical Reality. Plaintiffs were free to reject driving assignments or to not show up to work at all.

In *Keller v. Miri Microsystems LLC*, 781 F.3d 799, 810–11 (6th Cir. 2015), the Sixth Circuit found that an investment in welding equipment "signals a greater degree of economic independence because it is not a common item that most people use daily."

Plaintiffs were paid as independent contractors. Plaintiff Altare filed his tax returns as an independent contractor, even claiming expenses as such. Plaintiff Altare represented to customers that he was "just a driver." When Plaintiff Pulido stopped working with Defendant Vertical Reality he wrote to Defendant Sharkey that he was going to stop "providing service to the company," which is indicative of an independent contractor relationship.

Plaintiffs were clearly independent contractors who do not come within the purview of the FLSA. Therefore, judgment should be entered in favor of Defendants on Counts I through IV. Judgment should be entered in favor of Defendants for Counts V through VII since those counts are dependent on Defendants' alleged misclassification of Plaintiffs as independent contractors. Even if this Court were to find that there is a genuine issue of material fact with regard to Plaintiffs' status as independent contractors, it is clear that the motor carrier exemption should apply to their work and serve to effectively defeat their claims.

**Vertical Reality is a motor carrier.**

The motor carrier (MCA) exemption is found in Section 213(b)(1) of the FLSA and provides that the FLSA's overtime provision, section 207, does not apply "to any employee with respect to whom the Secretary of Transportation has the power to establish qualifications and maximum hours of service pursuant to the provisions of Section 31502 of Title 49." *Alvarado v. I.G.W.T. Delivery Systems, Inc.,* 410 F.Supp.2d 1272 (S.D. Fla. 2006). The Eleventh Circuit explained that "[t]he Secretary has the power to establish qualifications and maximum hours of service for employees who (1) are employed by carriers whose transportation of passengers or property by motor vehicle is subject to the Secretary's jurisdiction under the Motor Carrier Act; and (2) engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act." *Baez v. Wells Fargo Armored Service Corp.,* 938 F.2d 180, 181–182 (11th Cir.1991) (citing 29 C.F.R. § 782.2(a))(full citation omitted); *See, also, Aira v. Best Nat. Vending, Inc.,* 11-21530-CIV, 2012 WL 4935086, at *3 (S.D. Fla. Oct. 16, 2012).

The motor carrier exemption depends on the existence of the Secretary of Transportation's authority to regulate the maximum hours and qualifications of the employees, not the actual exercise of that authority. *McIntyre v. FLX of Miami, Inc.*, 08-20030-CIV, 2008 WL 4541017, at *7 (S.D. Fla. Oct. 8, 2008), *citing*, *Baez v. Wells Fargo Armored Service Corp.*, 938 F.2d 180, 181 n. 2. (11th Cir.1991) (full citation omitted).

Defendant Vertical Reality is a motor carrier because it is in the business of using trucks to carry property on public highways for interstate commerce. *See, Bilyou v. Duchess Beer Distributors, Inc.,* 300 F.3d 217 (2nd Cir.2002);

"Motor carrier" is defined as "a person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(14). A "motor private carrier" refers to:

> "[A] person, other than a motor carrier, transporting property by motor vehicle when—
> (1) the transportation is as provided in section 13501 of this title;
> (2) the person is the owner, lessee or bailee of the property being transported; and
> (3) the property is being transported for sale, lease, rent, or bailment or to further a commercial enterprise."

49 U.S.C. § 13102(15).

> "Section 13501 of title 49 provides that the Secretary of Transportation has jurisdiction if the transportation of passengers, property, or both, occurs:
>
> (1) between a place in—
> (A) a State and a place in another State;
> (B) a State and another place in the same State through another State; ....
> 49 U.S.C. § 13501."

*Chaohui Tang v. Wing Keung Enterprises, Inc.,* 210 F. Supp. 3d 376, 391 (E.D.N.Y. 2016).

There is no dispute that Vertical Reality is a motor carrier under the foregoing definition. Vertical Reality transports its property for sale across state lines. Vertical Reality has a DOT number and is registered with the Federal Motor Carrier Safety Administration (FMSCA) as a motor carrier.

**Plaintiffs come within the motor carrier exemption.**

It is undisputed that Plaintiffs, who were licensed commercial drivers, drove around the country in Defendants' large flatbed trailer delivering Defendants' equipment throughout the United States. Plaintiffs were subjected to Department of Transportation's rules and regulations regarding drug tests and other safety measures. Plaintiffs were pulled over the Department of Transportation (D.O.T.) several times for a variety of issues. An individual cannot come within the purview of the Secretary of the Department of Transportation and the Secretary of the Department of Labor at the same time.

The *Supreme* Court has mandated that the critical consideration in determining whether the Motor Carrier Act governs a motor carrier employee and so exempts him from FLSA is whether that employee's activities "affect safety of operation." *United States v. American Trucking Assn's,* 310 U.S. 534 (1940). The jurisdiction of the Secretary of Transportation under the Motor Carrier Act is "limited to those [motor carrier] employees whose activities affect the safety of operation."

The Supreme Court has held that, in view of Congress's determination that safety is paramount, it is the Department of Transportation's ***powe***r under the Motor Carrier Act to regulate "qualifications and maximum hours" that determines whether that statute applies, ***not*** whether the agency has exercised its power. *Id.* at 673; *Morris v. McComb,* 332 U.S. 422, 434 (1947). Accordingly, although the Department of Transportation only regulates the activities of truck drivers, certain other employees, such as loaders, mechanics, and helpers, are also exempt from FLSA. *Levinson,* 330 U.S. at 673, 67 S.Ct. at 943–44. Such employees need not devote all or even the majority of their time to safety-affecting activities in order to be covered by the Motor

Carrier Act. *Id.* at 674,. Thus it is enough that a "loader" devote "a 'substantial part' of his time to activities affecting safety of operation." *Id.* at 681.

The Seventh Circuit has held that "[a]n employee comes within the Secretary of Transportation's jurisdiction so long as the employee is subject, at any time, to be[ing] assigned to interstate trips." *Cantu v. Brink's Co*., 186 F. Supp. 3d 846, 849–50 (N.D. Ill. 2016)(full citation omitted).

In *McCall v. Disabled American Veterans*, 723 F. 3d 962 (8th Cir. 2013), the Eighth Circuit held that truck drivers came within the motor carrier act exemption based primarily on the fact that they drove trucks that weighed in excess of 10,000 pounds on an interstate basis.

It is undisputed that Plaintiffs drove Vertical Reality's flatbed truck on a regular basis to deliver its goods throughout the United States. Both Altare's testimony and hotel records establish Plaintiff Altare was constantly on the road, sometimes visiting more than fifteen (15) states in a 47-day period of time. It is also undisputed that Plaintiffs were subject to various D.O.T. rules and regulations when they were subjected to drug tests and other requirements of the D.O.T. Plaintiff Altare testified that he was pulled over several times by the D.O.T.

> **The motor carrier act applies to partial duty drivers or even groups of employees who may occasionally drive across state lines.**

It is anticipated that Plaintiffs will argue that the exemption should not apply simply because they performed work other than driving. Even assuming ***arguendo*** that Plaintiffs were employees, it is well established that an employee cannot be under the jurisdiction of both the Secretary of Labor and the Secretary of Transportation simultaneously. The amount of non-exempt work a worker can perform to still come within the exemption can be very slight, given the Supreme Court's holding that drivers who spent as little as 4% of their time transporting goods interstate still come within the exemption. *Morris v. McComb,* 332 U.S. 422 (1947).

Under DOL regulations, "drivers" who come within the motor carrier act include "partial duty drivers" who "drive in interstate or foreign commerce as part of a job in which they are required also to engage in other types of driving or nondriving work," *Allen v. Coil Tubing Services, L.L.C.,* 846 F. Supp. 2d 678, 695–96 (S.D. Tex. 2012), *aff'd,* 755 F.3d 279 (5th Cir. 2014).

Courts have also held that the exemption may apply where there is a "reasonable expectation" that an interstate trip could be assigned to members of a group, not whether a particular employee subjectively thought he was likely to receive an interstate assignment*." Allen v. Coil Tubing Services, L.L.C., 846* F. Supp. 2d 678, 702 (S.D. Tex. 2012), *aff'd,* 755 F.3d 279 (5th Cir. 2014). Stated another way, the Seventh Circuit has held that "[a]n employee comes within the Secretary of Transportation's jurisdiction so long as the employee is subject, at any time, to be[ing] assigned to interstate trips." *Johnson v. Hix Wrecker Serv., Inc.*, 651 F.3d 658, 660–61 (7th Cir. 2012)(internal quotations omitted)(quoting *Goldberg v. Faber Indus., Inc.*, 291 F. 2d 232, 234–35 (7th Cir.1961)).

In *Morris v. McComb,* 332 U.S. 422 (1947), the Supreme Court held that full-time drivers, who as a group spent approximately 4% of their time transporting goods in interstate commerce, and the remainder driving intrastate were subject to the MCA Exemption. "It is the character of the activities rather than the proportion of either the employee's time or of his activities that determines the actual need for the Commission's power." *Levinson v. Spector Motor Service,* 330 U.S. 649 (1947).

Applying these principles, in *Cantu v. Brink's Co*., 186 F. Supp. 3d 846, 849–50 (N.D. Ill. 2016), the Seventh Circuit rejected the plaintiffs' argument that they were only involved in *de minimis* interstate commerce because plaintiffs handled out-of-state shipments only occasionally.

The *Cantu,* court held although the main focus of the plaintiffs' jobs did not involve interstate travel, their occasional foray into interstate deliveries subjected them to the jurisdiction of the Secretary of Transportation under the Motor Carrier Act and Plaintiffs thus could not be subject to the jurisdiction of the Secretary of Labor and the FLSA at the same time. *Cantu v. Brink's Co.*, 186 F. Supp. 3d 846, 851 (N.D. Ill. 2016)(full citation omitted).

In *McIntyre v. FLX of Miami, Inc.*, 08-20030-CIV, 2008 WL 4541017, at *7 (S.D. Fla. Oct. 8, 2008), this court held that the plaintiff "was engaged in safety-affecting activities in his position as a truck dispatcher for the defendant. *See also, Wirtz v. Robinson & Stephens, Inc.,* 1972 WL 852 *5 (N.D.Ga.1972) (applying the Motor Carrier Act exemption and finding mechanics, wrecker and truck drivers, drivers helpers, loaders, yardmen and dispatchers of the defendant exempt from the overtime requirements of the FLSA).

Plaintiffs may also argue that the exemption should not apply because they drove a smaller truck on occasion. That argument was soundly rejected by many courts, including *Hernandez v. Brink's Inc.,* 2009 WL 113406 (S.D.Fla.2009), in which Judge Moore ruled that the Brink's drivers were exempt even though they drove a mix fleet of vehicles made up of trucks weighing both over and under 10,0001 pounds. *Hernandez,* 2009 WL 113406 at *5. Brink's fleet was made up of 104 trucks, 95 of which weighed over 10,001 pounds. *Id.* Judge Moore held that the Brink's drivers "worked on both commercial and non-commercial vehicles and their duties therefore sufficiently impacted the safety of operations of commercial motor vehicles to bring them within the scope of the FLSA's motor carrier exemption." *Id.* at *6 (citing *Collins v. Heritage Wine Cellars, Ltd.,* 2008 WL 5423550, *19–20 (N.D.Ill.2008)); *See, also, Cedano v. Alexim Trading Corp.*, 11-20600-CIV, 2011 WL 5239592 (S.D. Fla. Nov. 1, 2011).

**Conclusion**

There is overwhelming evidence establishing that Plaintiffs were independent contractors. Each Plaintiff spent an enormous amount of time on the road with no supervision. Each could reject job assignments if they chose to do so. Defendants had no expertise in welding and as a result relied on Plaintiff Pulido on occasion for that task. Plaintiffs do not dispute that they used their commercial driving licenses to drive Defendant Vertical Reality's flatbed truck around the country, sometimes getting pulled over by the D.O.T. along the way, and always going to D.O.T. weigh stations and being subjected to drug tests and other requirements. There is no genuine issue of material fact that Plaintiffs come within the motor carrier exemption. Each claim of Plaintiffs' Amended Complaint relies on the applicability of the FLSA and whether Plaintiffs were independent contractors. Counts V and VI are not causes of action as a matter of law.

Respectfully submitted,

/s Gary A. Costales
Gary A. Costales
Florida Bar No. 0948829
Law Offices of Gary A. Costales, P.A.
1200 Brickell Avenue, Suite 1440
Miami, Florida 33131
 (305) 375-9510
 (305) 375-9511(facsimile)
costalesgary@hotmail.com

**CERTIFICATE OF SERVICE**

**I hereby certify** that on March 31, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or

in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s Gary A. Costales

**SERVICE LIST**

***WALTER ALTARE V. VERTICAL REALITY MFG, INC ET AL***

***CASE NO.:21496-DPG***

**United States District Court, Southern District of Florida**

Henry Hernandez, Esq.
E-mail: henry@hhlawflrida.com
Secondary E-mail: legal@hhlawflorida.com

Monica Espino, Esq.
E-mail: me@espino-law.com
Secondary E-mail: legal@espino-law.com

Law Office of Henry Hernandez, P.A.
2655 S. Le Jeune Road, Suite 802
Coral Gables, FL 33134
Telephone: (305) 771-3374
Facsimile: (305) 722-7378
Attorney for Plaintiffs
*Notice of Electronic Filing*

Gary A. Costales, Esq.
Email: costalesgary@hotmail.com

Gary A. Costales, P.A.
1200 Brickell Ave. Suite 1440
Miami, Florida 33131
Telephone: (305) 375-9510 Ext. 314
Facsimile: (305) 375-9511
Attorney for Defendants
*Notice of Electronic Filing*