UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:19-cv-21496-GAYLES/OTAZO-REYES

WALTER ALTARE and all others
similarly situated under 29 U.S.C. § 206(b),
and YAMAURIS PULIDO,

      Plaintiffs,

v.

VERTICAL REALITY MFG, INC., a
Florida Limited Liability Company, and
KENNETH A. SHARKEY, individually,

      Defendants.

_____/

## ORDER

    **THIS CAUSE** comes before the Court on Defendants Vertical Reality MFG, Inc. and Kenneth A. Sharkey's Motion for Summary Judgment (the "Motion") [ECF No. 74]. The Court has reviewed the Motion and the record, heard oral argument, and is otherwise fully advised. For the reasons that follow, the Motion is denied.

## BACKGROUND

    Plaintiffs Walter Altare ("Altare") and Yamauris Pulido ("Pulido") bring this action against Defendants Vertical Reality MFG, Inc. ("Vertical Reality") and Kenneth A. Sharkey ("Sharkey") (collectively "Defendants") for alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and unjust enrichment. This Motion requires the Court to first determine whether Plaintiffs are independent contractors or Defendants' employees. If Plaintiffs are employees, the Court must then determine whether Plaintiffs are covered employees under the

FLSA or exempt under the Motor Carrier Act (the "MCA"). To do so, the Court must analyze the nature of both Plaintiffs' and Defendants' activities.

## I.     The Parties

### A.     Defendants Vertical Reality MFG, Inc. and Kenneth A. Sharkey

Vertical Reality manufactures, sells, and distributes durable entertainment and amusement equipment used as attractions at public gatherings, such as fairs, festivals, and amusement parks. Vertical Reality manufactures the equipment at a facility in Miami, Florida, and sells the equipment throughout the United States and the world. The equipment is often bulky, can be over 15 feet in length when disassembled for transportation, and can weigh thousands of pounds. The equipment is typically 16 to 48 feet long and weighs between 500 and 16,000 pounds. Vertical Reality has several storage sites and yards throughout the United States, including Miami and Arizona.

Rather than outsource the equipment's transportation, Vertical Reality hired drivers to transport the equipment to buyers. Vertical Reality is registered with the United States Department of Transportation ("DOT") and has a DOT motor carrier identification number. Vertical Reality purchased a flatbed truck for drivers to transport the equipment.[1] The flatbed truck has a gross vehicle weight[2] of 33,000 pounds and requires a commercial driver's license ("CDL") to drive across state lines.

---

[1] While Defendants only mention the flatbed and Altare's own truck, [ECF No. 75 at 2 ¶ 4; 7 ¶ 33], the record suggests that Plaintiffs used several vehicles to transport equipment. Plaintiffs allege that they "drove an array of vehicles ranging in weight, including vehicles weighing 4,000, 6,000, and 10,000 pounds," [ECF No. 82 at 2 ¶ 8], and that "Vertical Reality also utilized a company Dodge Ram 3500 . . . and rented vehicles from Budget, Penske, and U-Haul," *id.* at 1–2 ¶ 4. Defendant Sharkey details several vehicles that Plaintiffs may have used, including: (1) a 2003 Dodge Ram 3500 with a gross vehicle weight of 12,000 pounds; (2) a 2004 Dodge Ram 3500 with a listed gross vehicle weight of 7,536 pounds, which Sharkey believes is inaccurate; (3) a Ford F-250 that Sharkey estimates the gross vehicle weight ranges from 9,900 to 14,000 pounds; and (4) a trailer used to pull equipment with a weight of 6,500 pounds. *See* [ECF No. 90-2].

[2] Gross vehicle weight rating ("GVWR") is the value specified by the manufacturer as the loaded weight of a single motor vehicle. Gross combination weight rating ("GCWR") is the greater of: (a) a value specified by the manufacturer

**B.      Plaintiffs Walter Altare and Yamauris Pulido**

      *1.      Plaintiff Walter Altare*

Vertical Reality hired Altare as a driver and paid him as an independent contractor, though the parties dispute the nature of Altare's job duties.[3] *Compare* [ECF No. 75 at 2–3 ¶ 9], *with* [ECF No. 82 at 2 ¶ 9]. Altare maintained a Class B CDL and was subject to DOT regulations, including scheduled drug tests and random drug and alcohol tests. Altare was responsible for assuring that he operated the vehicle in a safe manner and in accordance with DOT regulations. Altare made approximately 8 to 10 trips per year, with each trip potentially lasting 20 to 45 days and requiring him to make stops in various states.[4] Altare typically spent eight months per year driving for Vertical Reality. However, Altare was not always available to work when Vertical Reality called with assignments and the parties dispute whether Defendants required Altare to wait at home for his next assignment or whether he chose to wait. *Compare* [ECF No. 75 at 6 ¶¶ 29 & 31], *with* [ECF No. 82 at 3–4 ¶¶ 29 & 31]. During some trips, Altare hired and paid additional labor to assist with the equipment being delivered.

      *2.      Plaintiff Yamauris Pulido*

Vertical Reality hired Pulido as a welder and driver and paid him as an independent contractor, though the parties dispute the nature of Pulido's job duties.[5] *Compare* [ECF No. 75 at

---

of the power unit, if such value is displayed on the Federal Motor Vehicle Safety Standard ("FMVSS") certification label required by the National Highway Traffic Safety Administration, or (b) the sum of the GVWRs or the gross vehicle weights ("GVWs") of the power unit and the towed unit(s), or any combination thereof, that produces the highest value. 49 C.F.R. § 390.5.

[3] Defendants state that Altare's "main duty as a subcontractor was to deliver and pick up equipment," that he "did not do any installations . . . [because] Vertical Reality would fly out particular employees to do any installations," although he did "assemble[] equipment on rare occasions . . . ." [ECF No. 75 at 2–3 ¶ 9]. Plaintiffs argue that Altare "also had to train customers on how to use the equipment" and his duties also "included loading, unloading, assembly, disassembly, maintenance, and service of the equipment . . . ." [ECF No. 82 at 2 ¶ 9].

[4] For example, hotel records suggest that between March 17, 2016 and April 18, 2016, Altare stayed in fifteen cities across eight states over the course of a thirty-two-day period; and between June 22, 2016 and August 9, 2016, he stayed in twenty-five cities across fifteen states over the course of a forty-seven-day period. [ECF No. 75 at 4 ¶ 20].

[5] Defendants state that "Pulido welded equipment and also drove out of state for Vertical Reality delivering equipment," but he "did not do maintenance on equipment when he was on the road . . . ." [ECF No. 75 at 5 ¶ 24].

3

5 ¶ 24], *with* [ECF No. 82 at 3 ¶ 24]. Pulido maintained a Class B CDL and was subject to DOT regulations, including physical exams and drug tests every two years. Pulido was responsible for assuring that he operated the vehicle in a safe manner and in accordance with DOT regulations. Pulido could work as a welder or driver for other companies while being employed with Vertical Reality.[6]

## II.    Procedural History

On April 18, 2019, Altare filed a Complaint against Defendants for minimum wage and overtime violations under the FLSA, alleging that Defendants did not adequately compensate him for hours worked. [ECF No. 1]. On May 20, 2019, Defendants moved to dismiss the Complaint, [ECF No. 10], which the Court granted in part and denied in part on January 14, 2020, [ECF No. 41]. On January 28, 2020, Altare filed his Amended Complaint against Defendants, alleging: (1) overtime compensation violations under the FLSA (Counts I and II); (2) prompt pay violations under the FLSA (Counts III and IV); (3) misclassification of employee status pursuant to Florida Law (Counts V and VI); and (4) unjust enrichment (Count VII). [ECF No. 48]. On February 14, 2020, Defendants moved to dismiss Counts V and VI of the Amended Complaint, [ECF No. 55], which the Court granted on April 21, 2020, [ECF No. 79].

On March 31, 2020, Defendants filed the instant Motion, arguing that: (1) Plaintiffs were independent contractors and (2) even if they were employees, the motor carrier exemption bars Plaintiffs' overtime compensation claims under the FLSA. [ECF No. 74]. In response, Plaintiffs argue that: (1) they were Vertical Reality's employees and (2) Plaintiffs qualify for overtime

---

Defendants also state that Pulido may have done welding repairs while on a travel assignment and when he "was not driving, Vertical Reality would fly him into a site to do welding." *Id.* Plaintiffs argue that Pulido's job duties included "welding, driving, loading, unloading, assembly, disassembly, maintenance, and service of the equipment." [ECF No. 82 at 3 ¶ 24].

[6] Plaintiffs allege that Pulido maintained an exclusive employment relationship with Vertical Reality because of his work schedule. [ECF No. 82 at 5 ¶ 41].

compensation under the FLSA because the "Safe, Accountable, Flexible, Efficient Transportation Equity Act: a Legacy for Users Technical Corrections Act of 2008" (the "TCA") creates a "small vehicle" exception to the motor carrier exemption. [ECF No. 81]. On December 15, 2020, the Court heard oral argument on the Motion. [ECF No. 103].

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment "is appropriate only if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (per curiam) (internal quotation marks omitted) (quoting Fed. R. Civ. P. 56(a)). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). An issue is "genuine" when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the nonmoving party in light of her burden of proof. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (citation omitted). A fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259 (11th Cir. 2004) (citation omitted).

"Where the material facts are undisputed and all that remains are questions of law, summary judgment may be granted." *Eternal Word Television Network, Inc. v. Sec'y of U.S. Dep't of Health & Human Servs.*, 818 F.3d 1122, 1138 (11th Cir. 2016) (citation omitted), *vacated on other grounds*, 2016 WL 11503064, at *1 (11th Cir. May 31, 2016). The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *SEC v. Monterosso*, 756 F.3d 1326, 1333 (11th Cir. 2014) (per curiam).

However, to prevail on a motion for summary judgment, "the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015). Furthermore, conclusory allegations will not create an issue of fact for trial sufficient to defeat a well-supported motion for summary judgment. *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990) (citation omitted).

## DISCUSSION

### I.      Whether Plaintiffs are Independent Contractors or Defendants' Employees

Plaintiffs argue that they are entitled to minimum wages and overtime compensation under the FLSA because they were Defendants' employees. Defendants argue that Plaintiffs are exempt from the FLSA's provisions because Plaintiffs were independent contractors. The Court finds that genuine issues of material fact remain as to whether Plaintiffs were employees or independent contractors.

#### A.      Determining Employment Status under the FLSA

Under the FLSA, an "employer" is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d). An "employee" is defined as "any individual employed by an employer," with certain exceptions. *Id.* § 203(e)(1). To "employ" under the FLSA is "to suffer or permit to work." *Id.* § 203(g). "The FLSA applies to employees but does not apply to independent contractors." *Altman v. Sterling Caterers, Inc.*, 879 F. Supp. 2d 1375, 1379 (S.D. Fla. 2012). Determining whether Plaintiffs were independent contractors or employees requires the Court to look past "the 'label' put on the relationship by the parties" and "look to the 'economic reality' of the relationship between the alleged employee and alleged employer and whether that relationship demonstrates dependence." *Scantland v. Jeffry*

6

*Knight, Inc.*, 721 F.3d 1308, 1311 (11th Cir. 2013) (citations omitted); *see also Beck v. Boce Grp., L.C.*, 391 F. Supp. 2d 1183, 1186 (S.D. Fla. 2005) ("In making this determination Courts must evaluate the economic realities of the individual case rather than rely upon traditional common law principles." (citation omitted)). Courts look to six factors to guide their determination:

> (1)  the nature and degree of the alleged employer's control as to the manner in which the work is to be performed;
> (2)  the alleged employee's opportunity for profit or loss depending upon his managerial skill;
> (3)  the alleged employee's investment in equipment or materials required for his task, or his employment of workers;
> (4)  whether the service rendered requires a special skill;
> (5)  the degree of permanency and duration of the working relationship;
> (6)  the extent to which the service rendered is an integral part of the alleged employer's business.

*Scantland*, 721 F.3d at 1312. "[T]he overarching focus of the inquiry is economic dependence . . . . No one of these considerations can become the final determinant, nor can the collective answers to all of the inquiries produce a resolution which submerges consideration of the dominant factor—economic dependence." *Id.* (quoting *Usery v. Pilgrim Equip. Co., Inc.*, 527 F.2d 1308, 1311–12 (5th Cir. 1976)). Determining economic dependence requires the Court to "focus[] on whether an individual is 'in business for himself' or is 'dependent upon finding employment in the business of others.'" *Id.* (quoting *Mednick v. Albert Enters., Inc.*, 508 F.2d 297, 301–02 (5th Cir. 1975)); *see also id.* ("It is *dependence* that indicates employee status." (citation omitted)).

> **B.    Plaintiffs' Status under the FLSA**

The Court finds that genuine issues of material fact remain as to whether Plaintiffs were independent contractors or Defendants' employees. While certain factors weigh in either Plaintiffs' or Defendants' favor, genuine issues of material facts remain for at least four of the six factors and "go to the heart" of "the overriding concern in determining . . . economic dependence" and employment status. *See Altman*, 879 F. Supp. 2d at 1381.

Here, the record shows that Defendants controlled Plaintiffs' assignments, including the destination and timeframe, but did not instruct Plaintiffs on how to complete them. [ECF No. 75 at 3 ¶ 10]. The record also suggests that: (1) Defendants' transportation assignments could take weeks or months to complete; (2) Plaintiffs would return to Miami and be asked to stay in Miami while waiting for their next assignment; (3) while Plaintiffs could reject assignments and would not suffer consequences for rejecting or missing assignments, they depended on Defendants for additional assignments; and (4) although Plaintiffs could obtain other employment, it is unclear whether they did or whether they profited from it, except on one occasion when Altare profited from a separate sale.

The parties do not dispute that Altare occasionally hired additional labor to assist with the equipment and that Pulido would occasionally hire a local welder to assist with welding during a transportation assignment. [ECF No. 75 at 5 ¶¶ 25–26]. However, the parties dispute whether Pulido used his own tools and dispute which vehicles Plaintiffs used on transportation assignments. *See* [ECF No. 74 at 5]; [ECF No. 81 at 7]. The undisputed facts also reflect that Plaintiffs possessed a specialized Class B CDL required to drive Defendants' flatbed truck and were subject to DOT regulations. It is also undisputed that Plaintiffs were responsible for operating the trucks in a safe manner and in accordance with DOT regulations. However, the parties dispute whether Defendants trained Plaintiffs in their job duties, including the assembly, disassembly, and maintenance of equipment. *See* [ECF No. 82 at 4 ¶ 37; 5 ¶ 40].

Plaintiffs do not dispute that they were paid as independent contractors or that they represented themselves as such on their tax returns. [ECF No. 82 at 2 ¶ 11; 3 ¶ 26]. However, Plaintiffs argue that the parties had a permanent working relationship because Defendants employed Altare for 15 years and Pulido for 6 years. [ECF No. 81 at 9]. Importantly, there is no

8

indication in the record whether Plaintiffs were told that their employment was for a finite or an indefinite period of time. And although Plaintiffs *could* seek additional employment, the record does not conclusively indicate that they *did* take other employment. Moreover, the record suggests that Plaintiffs provided integral services to Defendants' business. Specifically, Defendants "relied on Plaintiffs . . . to drive the flatbed truck that belonged to Vertical Reality to deliver equipment throughout the United States." [ECF No. 75 at 2 ¶ 7].

On this record, the Court cannot make a finding as a matter of law as to whether Plaintiffs were independent contractors or Defendants' employees. Therefore, the Motion is denied as to Plaintiffs' status as independent contractors or employees.

## II.  Whether the Motor Carrier Exemption or the "Small Vehicle" Exception Applies to Plaintiffs' Claims

Even if Plaintiffs were deemed employees, Defendants argue that Plaintiffs' claims are barred by the FLSA's motor carrier exemption. Plaintiffs argue that they are "covered employees" under the TCA's small vehicle exception, which entitles them to overtime compensation. The Court finds that genuine issues of material fact remain as to whether the motor carrier exemption or the "small vehicle" exception controls Plaintiffs' claims.

### A.    The FLSA's Motor Carrier Exemption

Under the FLSA, an employer must compensate an employee "at a rate not less than one and one-half times the regular rate at which [the employee] is employed" for a workweek longer than forty hours. 29 U.S.C. § 207(a)(1). However, the FLSA includes a motor carrier exemption that exempts from overtime compensation "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of [the MCA]." 29 U.S.C. § 213(b)(1). The motor carrier exemption "depend[s] on whether the Secretary has the power to regulate, not on whether the Secretary has actually

exercised such power." *Baez v. Wells Fargo Armored Serv. Corp.*, 938 F.2d 180, 181 n.2 (11th Cir. 1991).

The motor carrier exemption applies to employees who: "(1) [a]re employed by carriers whose transportation of . . . property by motor vehicle is subject to [the Secretary's] jurisdiction under [the MCA];" and "(2) engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of . . . property in interstate or foreign commerce . . . ." 29 C.F.R. § 782.2(a). The burden lies with the employer to show that the motor carrier exemption applies. *See Abel v. S. Shuttle Servs., Inc.*, 631 F.3d 1210, 1212 (11th Cir. 2011). Accordingly, Defendants must establish that: (1) Vertical Reality is subject to the jurisdiction of the Secretary of Transportation (the "Secretary") and (2) Plaintiffs' duties directly affect the safety of operation of motor vehicles in the transportation on the public highways of property in interstate or foreign commerce. 29 C.F.R. § 782.2; *see also Baez*, 938 F.2d at 181–82; *Walters v. Am. Coach Lines of Miami, Inc.*, 575 F.3d 1221, 1227 (11th Cir. 2009) (per curiam) ("The applicability of the motor carrier exemption depends both on the class to which his employer belongs and on the class of work involved in the employee's job." (internal quotation marks omitted)).

### 1. *Vertical Reality is Subject to the Secretary's Jurisdiction*

The Secretary's jurisdiction over transportation is limited "to the extent that passengers, property, or both, are transported by motor carrier . . . between a place in . . . a State and a place in another State . . . [or] the United States and a place in a foreign country to the extent the transportation is in the United States . . . ." 49 U.S.C. § 13501(1). Generally, the Secretary may prescribe the requirements for "qualifications and maximum hours of service of employees of, and safety of operation and equipment of, a motor carrier" and of "qualifications and maximum hours

of service of employees of, and standards of equipment of, a motor private carrier, when needed to promote safety of operation."[7] 49 U.S.C. § 31502(b)(1)–(2).

"The first prong . . . is always satisfied where the Secretary has exercised jurisdiction over the employer." *Rodriguez*, 2013 WL 1681839, at *4 (citing *Mena v. McArthur Dairy, LLC*, 352 F. App'x 303, 306 (11th Cir. 2009)). Here, the parties do not dispute that Vertical Reality is registered with the DOT and assigned a DOT motor carrier identification number. [ECF No. 75 at 2 ¶ 5]; *see also Mena*, 352 F. App'x at 306 (finding that the Secretary exercised jurisdiction where defendant was registered with the DOT and assigned a DOT registration number). Additionally, the parties do not dispute that Plaintiffs were subject to DOT inspections during transportation assignments. [ECF No. 75 at 3 ¶¶ 13–18, 22–23]; *see also Mena*, 352 F. App'x at 306 (finding that the Secretary exercised jurisdiction where defendant's drivers, like plaintiff, were subject to DOT inspection). Vertical Reality is, therefore, a carrier subject to the jurisdiction of the Secretary.

> 2. *Plaintiffs' Duties Directly Affected the Safety of Operation of Motor Vehicles*

To satisfy the second prong, Defendants must show that Plaintiffs' "work involve[d] engagement in activities consisting wholly or in part of a class of work" defined: "(i) [a]s that of a driver, driver's helper, loader, or mechanic, and (ii) as directly affecting the safety of operation of motor vehicles on the public highways in transportation in interstate or foreign commerce . . . ."

---

[7] In their Motion, Defendants state that Vertical Reality is a "motor carrier" under the MCA. [ECF No. 74 at 8]. Vertical Reality is more properly designated as a "motor private carrier" under the MCA. A "motor carrier" is defined as "a person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(14). Conversely, a "motor private carrier" is "a person, other than a motor carrier, transporting property by motor vehicle when—(A) the transportation is as provided in [the MCA]; (B) the person is the owner . . . of the property being transported; and (C) the property is being transported for sale, lease, rent, or bailment or to further a commercial enterprise." *Id.* § 13102(15). This distinction is important because the Secretary's "jurisdiction over private carriers is limited by the statute to private carriers of property by motor vehicle . . . , while his jurisdiction extends to common and contract carriers of both passengers and property." 29 C.F.R. § 782.2(b)(1). Vertical Reality does not provide motor vehicle transportation as its primary source of compensation. Rather, Vertical Reality manufactures, sells, and distributes its own durable entertainment and amusement equipment, which it then transports to customers. *Rodriguez v. Pan & Plus Baking, LLC*, No. 12-CIV-23193, 2013 WL 1681839, at *4 (S.D. Fla. Apr. 17, 2013).

29 C.F.R. § 782.2(b)(2). A "driver" is defined as "an individual who drives a motor vehicle in transportation which is . . . in interstate or foreign commerce." 29 C.F.R. § 782.3(a).

"In determining whether an employee falls within such an exempt category, neither the name given to his position nor that given to the work that he does is controlling . . . ; what is controlling is the character of the activities involved in the performance of his job." 29 C.F.R. § 782.2(b)(2). While the parties dispute the full scope of Plaintiffs' job duties, they do not dispute that Plaintiffs were drivers and transported equipment across the United States and internationally. [ECF No. 75 at 2–3 ¶ 9; 5 ¶ 24]. *See also id.* at 4 ¶ 20 (showing extent of Altare's travel); *see also Mena v. McArthur Dairy, LLC*, No. 08-CIV-22585, 2009 WL 10666944, at *6–7 (S.D. Fla. May 12, 2009) (finding second prong met where plaintiff, "[a]s a full-duty, swing route driver [,] . . . transported products by truck in interstate highways . . . ."), *aff'd*, 352 F. App'x 303 (11th Cir. 2009). Additionally, Plaintiffs each maintained a Class B CDL, which they needed in order to drive the flatbed truck. Therefore, Plaintiffs' duties directly affected the safety of operation of motor vehicles in the transportation on the public highways of property in interstate or foreign commerce. As both prongs are satisfied, the motor carrier exemption applies here.

**B.      The TCA's "Small Vehicle" Exception**

Plaintiffs argue that even if the motor carrier exemption applies, they are entitled to overtime compensation under the FLSA because of the TCA's "small vehicle" exception. The TCA's "small vehicle" exception, which broadens the FLSA's overtime requirements to any "covered employee," limits the application of the motor carrier exemption. Pub. L. No. 110–244, 122 Stat. 1572, 1620, Title III, § 306(a) (2008). Under the "small vehicle" exception, a "covered employee" is an individual:

(1)     who is employed by a motor carrier or motor private carrier . . . ;
(2)     whose work, in whole or in part, is defined—

        (A)     as that of a driver, driver's helper, loader, or mechanic; and

        (B)     as affecting the safety of operation of motor vehicles weighing 10,000 pounds or less in transportation on public highways in interstate or foreign commerce . . . ; and

    (3)     who performs duties on motor vehicles weighing 10,000 pounds or less.

*Id.* § 306(c).[8] Accordingly, "the Motor Carrier Exemption does not apply to a driver . . . in any workweek in which their work affects the safe, interstate operation of motor vehicles weighing 10,000 pounds or less." *Santana v. Lykes Exclusive, LP*, No. 12-CIV-22013, 2013 WL 1001850, at *3 (S.D. Fla. Mar. 13, 2013). Those drivers are instead covered employees under the FLSA and are therefore entitled to overtime compensation. *Bedoya v. Aventura Limousine & Transp. Serv., Inc.*, No. 11-CIV-24432, 2012 WL 3962935, at *3 (S.D. Fla. Sept. 11, 2012).

Plaintiffs argue that they are covered under the FLSA, pursuant to the "small vehicle" exception, because they drove vehicles weighing less than 10,000 pounds. Courts are split on the issue of employees who work mixed fleets with both vehicles weighing over 10,000 pounds and weighing 10,000 pounds or less. Some courts hold that "the [motor carrier exemption] still applies so long as the employee spends more than a 'de minimus' amount of time driving a [] vehicle in interstate commerce" weighing over 10,000 pounds. *Rehberg v. Flowers Baking Co. of Jamestown, LLC*, 162 F. Supp. 3d 490, 509 (W.D.N.C. 2016); *see also Twiddy v. Alfred Nickles Bakery, Inc.*, No. 5:14CV02053, 2017 WL 1199167, at *5–6 (N.D. Ohio Mar. 31, 2017) (reviewing cases). However, many district courts—including this Court—and two circuit courts that directly considered the issue, hold that a driver who spends part of a week driving vehicles weighing 10,000 pounds or less is covered under the FLSA. *See Schilling v. Schmidt Baking Co., Inc.*, 876 F.3d 596,

---

[8] There are additional exceptions to the TCA that are not relevant to this case, such as using a vehicle designed or used to transport more than 8 passengers (including the driver) for compensation or using a vehicle designed or used to transport more than 15 passengers (including the driver) not for compensation. *See* Pub. L. No. 110-224, Title III, § 306(c)(2)(B).

601–03 (4th Cir. 2017) (holding that plaintiffs were "covered employees" where "between 70% and 90% of their delivery trips were made on vehicles indisputably weighing less than 10,000 pounds."); *McMaster v. E. Armored Servs., Inc.*, 780 F.3d 167, 170 (3d Cir. 2015) (holding that a driver/guard who drove half of her trips on vehicles weighing less than 10,000 pounds worked "in part" on those vehicles and therefore was a "covered employee" under the TCA); *Twiddy*, 2017 WL 1199167, at *6; *Rojas v. Garda CL Se., Inc.*, No. 13-CIV-23173, 2015 WL 5084135, at *5 (S.D. Fla. Aug. 28, 2015) (finding genuine issues of material fact as to whether plaintiffs worked "in part" on vehicles weighing less than 10,000 pounds); *Gordilis v. Ocean Drive Limousines, Inc.*, No. 12-CIV-24358, 2015 WL 1858380, at *4 (S.D. Fla. Apr. 22, 2015) (finding genuine issue of material fact as to the amount of time plaintiffs worked on vehicles weighing less than 10,000 pounds); *Aikins v. Warrior Energy Servs. Corp.*, No. 6:13-CV-54, 2015 WL 1221255, at *6 (S.D. Tex. Mar. 17, 2015).

Determining how much time a driver must spend in a vehicle weighing 10,000 pounds or less to be considered a "covered employee" under the TCA is a difficult inquiry because the TCA does not define "in part". When addressing the issue, the Third Circuit declined to set forth a strict definition of the phrase. *See McMaster*, 780 F.3d at 170 n.4 ("We need not now affix a firm meaning to the term 'in part.' Whatever 'in part' means, it is certainly satisfied by McMaster, who spent 49% of her days on vehicles less than 10,000 pounds."). Some courts suggest that a driver "must perform some meaningful work for more than an insubstantial time with vehicles weighing 10,000 pounds or less" to be a covered employee. *Aikins*, 2015 WL 1221255, at *6 (citations and emphasis omitted).

This Court, like the Third Circuit in *McMaster*, need not define "in part" at this juncture. Whether it means more than *de minimus* or "more than insubstantial," the record provides very

little evidence as to the amount of time Plaintiffs spent driving motor vehicles weighing 10,000 pounds or less. In fact, except for the flatbed truck, the record fails to provide concrete evidence as to the fleet of motor vehicles driven, *see* [ECF No. 82 at 1–2 ¶ 4], and their weights, *see* [ECF No. 82 at 2 ¶ 8]. *But see* [ECF No. 75 at 4 ¶ 21] (parties do not dispute the weight of the equipment transported, which ranged from 500 to 16,000 pounds); [ECF No. 75 at 7 ¶ 33] (parties do not dispute that Altare used his own truck for some of Defendants' transportation assignments). The parties also fail to clearly detail each Plaintiff's job duties. *Compare* [ECF No. 75 at 2–3 ¶ 9; 5 ¶ 24], *with* [ECF No. 82 at 2 ¶ 9; 3 ¶ 24].

In support of and in opposition to the Motion, the parties rely on Plaintiffs' affidavits and deposition testimony, Defendant Sharkey's affidavit and deposition testimony, Albert Lemus, Jr.'s deposition testimony, and a few additional documents. That evidence conflicts and is otherwise unclear as to the duties Plaintiffs performed during a given assignment, the vehicles Plaintiffs drove, the weights of those vehicles, and when Plaintiffs drove those vehicles. Without more, the Court cannot make a finding as a matter of law whether Plaintiffs were covered employees under the TCA. *See Garcia v. JIA Logistics, Inc.*, No. 16-CIV-22870, 2017 WL 2346149, at *6 (S.D. Fla. May 30, 2017) ("There might have been a week where Plaintiff drove the van two out of five days. There might have been weeks where Plaintiff never drove the van. There simply is no way for the Court to ascertain, based on the record before it, whether Plaintiff's use of the van was sufficient to make him a covered employee."). Because genuine issues of material fact remain as to whether the motor carrier exemption or the "small vehicle" exception applies to Plaintiffs' claims, Defendants' Motion is denied.

15

**CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.    Defendants' Vertical Reality MFG, Inc. and Kenneth A. Sharkey's Motion for
      Summary Judgment, [ECF No. 74], is **DENIED**.

2.    The parties shall attend a Telephonic Status Conference at **10:00 A.M. on May 12,**
      **2021**.

**DONE AND ORDERED** in Chambers in Miami, Florida, this 30th day of April, 2021.

DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE